UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARY MCNALLY,

       Plaintiff,

v.

RECEIVABLES PERFORMANCE
MANAGEMENT, LLC

       Defendant.

Case No.: 1:11-cv-13393
Hon. Thomas L. Ludington
Hon. Charles E. Binder

| RONALD S. WEISS (P48762) | CHARITY A. OLSON (P68295) |
|---|---|
| WEISBERG & MEYERS, LLC | OLSON LAW GROUP |
| Attorney for Plaintiff | Attorneys for Defendant |
| 7035 Orchard Lake Rd., Suite 600 | 106 E. Liberty, Suite 303 |
| West Bloomfield, MI 48322 | Ann Arbor, MI 48104 |
| 888-595-9111 Ext. 230 | 734-222-5179 |
| Fax: 866-565-1327 | Fax: 866-941-8712 |
| rweiss@attorneysforconsumers.com | colson@olsonlawpc.com |

**PLAINTIFF'S REPLY TO RESPONSE TO MOTION TO ENFORCE SETTLEMENT**

       Mary McNally ("Plaintiff"), by and through the undersigned counsel, hereby submits her reply to the response submitted Receivables Performance Management, LLC ("Defendant").

**I.    Introduction.**

       Defendant's refusal to remit full payment to Plaintiff's counsel is a violation of their agreement. Defendant's claim that it is simply attempting to obey the tax code appears to be nothing more than a pretext for frustrating settlement efforts. Defendant is virtually alone in interpreting the tax code to treat an FDCPA settlement, paid to Plaintiff's counsel, as part of Plaintiff's taxable income. Unlike under a contingency agreement, attorneys' fees under an FDCPA settlement or award are typically substantially higher than the amount that the plaintiff receives. For example, in a "garden variety" FDCPA case litigated before the Eastern District of Michigan, which settled at the final pretrial conference for $1,000.00 to the plaintiff in statutory

1

damages, the court awarded the prevailing plaintiff $43,827.00 in attorneys' fees along with $3,500.17 in costs, for a total of $47,327.17. *Shields v. Merchants & Med. Credit Corp., Inc.*, 2011 WL 3566485 (E.D. Mich. June 30, 2011) report and recommendation adopted, 2011 WL 3648425 (E.D. Mich. Aug. 15, 2011). Accordingly, the United States Supreme Court has noted that taxing consumer-plaintiffs for the full amount in cases brought under fee-shifting statutes could "lead to the perverse result that the plaintiff loses money by winning the suit" and "undermine the effectiveness of fee-shifting statutes in deputizing plaintiffs and their lawyers to act as private attorneys general." *C.I.R. v. Banks*, 543 U.S. 426, 438-39 (2005). Thus, permitting Defendant to refuse payment would allow it to achieve its goal of chilling FDCPA actions against it.

**II.     Taxing Successful Plaintiffs On The Entire Settlement Amount Would Controvert The Purpose Of The FDCPA's Fee-Shifting Statute.**

By taxing successful FDCPA plaintiffs for the entire amount of a settlement, plaintiffs would frequently incur federal tax liability for substantially more than they receive as compensation. This would eviscerate the purpose of the FDCPA's fee-shifting statute, which enables debtors to retain competent counsel to vindicate their federally-protected rights. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (mandate of attorneys' fee is "a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general."); *Venegas v. Mitchell*, 495 U.S. 82, 86 (1990) (statutory fees enable "plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail").

"Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important rights that cannot be valued solely in monetary terms, and Congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (quoting *City of Riverside v. Rivera*, 477

U.S. 561 (1986)). Providing the private bar with an incentive to engage in consumer litigation allows consumers to avail themselves of their statutory rights and removes the difficulty of obtaining counsel in pursuing recoveries which are relatively small compared to potential legal costs. *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

### III.     Courts Should Not Interpret The Tax Code To Lead To An Absurd Result.

I.R.C. § 61(a) defines income broadly as "all income from whatever source derived." It does not follow, however, that the settlement amount, a large portion of which will never become the property of Plaintiff, is taxable against Plaintiff as income. "In examining the reasonableness of the IRS's interpretation of an undefined statutory term, we will certainly consider whether the definition contained in the revenue ruling comports with the plain meaning of the term and avoids absurd results." *Kornman & Associates, Inc. v. United States*, 527 F.3d 443, 453 (5th Cir. 2008). Requiring a plaintiff to pay taxes on the entire amount of an FDCPA settlement, the majority of which constitutes the attorneys' fees and costs, unquestionably goes against the intent of Congress with regard to both the Internal Revenue Code and the FDCPA, which this Court is empowered to affect. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 837-38 (1984) ("if Congress has not directly spoken to the precise question at issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). For instance, at a tax rate of twenty-eight percent (28%)—as Defendant withholds here—on a $20,000.00 fee award results in $5,600.00 in taxes. Even if the consumer recovers the $1,000.00 maximum in statutory damages, she would owe the Internal Revenue Service $4,600.00 as a result of protecting her rights and filing a lawsuit pursuant to the FDCPA. Construing the IRC as to tax a successful FDCPA plaintiff leads to an absurd result.

3

**IV. The Settlement Amount Is Not Taxable Against Plaintiff.**

Defendant argues that it was required to withhold a portion of the settlement amount in the face of "looming settlement payment deadline and the specter of IRS penalties." (Doc. 19 at 5). Yet Defendant is virtually alone in its belief that an *entire* FDCPA settlement amount, paid directly to Plaintiff's attorney, is a reportable payment against the Plaintiff. Treasury Regulation 1.6041-1(h) states that, for the purposes of a return of information, a payment must come within a person's "own control and disposition."[1] Here, at no time will the entire settlement amount come within Plaintiff's own "control and disposition." Rather, the entire settlement amount will come within the "control and disposition" of Plaintiff's counsel, who has freely provided his taxpayer information number ("TIN"). (Doc. 18-4).

Plaintiff is not suggesting that Defendant should not comply with the law. Plaintiff only argues that Defendant is obligated to pay the full settlement amount as their "Agreement is enforceable regardless of the taxability of the settlement amount or any portion thereof." (Doc. 19). Defendant may choose to send an additional amount to the IRS based on what it believes it is required to tender and its interpretation of the law. But Defendant must comply with the agreement.

**V. Congress Has Drafted Legislation To Avoid Similar Inequitable Tax Code Results.**

Congress included an amendment to the IRC in the American Jobs Creation Act ("AJCA") that would allow taxpayers to deduct "attorney fees and court costs paid by, or on behalf of, the taxpayer in connection with" actions brought under a lengthy list of remedial statutes that authorize fee awards. *See* 26 U.S.C. § 62. The statute does not specifically list the FDCPA or other consumer rights statutes, but it does contain a catch-all provision for "[a]ny

---

[1] *See* Treas. Reg. § 1.6041-1(h) *When payment deemed made.* For purposes of a return of information, an amount is deemed to have been paid when it is credited or set apart to a person without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and is made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition.

provision…providing for the enforcement of civil rights." 26 U.S.C. § 62(e)(18)(i). Legislative history shows the amendment was meant to "help in well known cases, such as that of Cynthia Spina, an Illinois police officer that secured a settlement in a sexual discrimination case that left her owning $10,000 or more." 150 Cong. Rec. S11,089 (daily ed. Oct. 10, 2004). While FDCPA actions are lesser-known, courts routinely use case law surrounding civil rights statutes in dealing with FDCPA attorneys' fees issues. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997) ("the methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide"). Like civil rights statutes, the FDCPA is designed to protect individuals from oppressive conduct. *See* 15 U.S.C. § 1692 (highlighting "abusive, deceptive, and unfair debt collection practices"). The AJCA demonstrates Congressional intent to avoid such inequitable taxation. Defendant cannot withhold any amount and the Court should enforce the settlement agreement.

## VI. The Case Law Does Not Support Defendant's Position.

*Johnson v. LPL Fin. Services* did not consider the implication of Treas. Reg. 1.6041-1(h). It applies agency examples involving contingency cases for "back wages," "lost profits," and "damages" in the commercial context, which are inapplicable to remedial fee-shifting statutes. 517 F. Supp. 2d 1231, 1236 (S.D. Cal. 2007); Treas. Reg. § 1.6045-5. *McCormick v. Brezinski*, 2010 U.S. Dist. LEXIS 36106 (E.D. Mich. 2010), also relied upon by Defendant, is inapposite because the parties explicitly agreed to use a Form 1099. *Id*. at *10 ("Defendant has requested Plaintiff's social security number so that Defendant may include the same in the Form 1099 referenced in Paragraph J of the Settlement Agreement."). Here, Plaintiff rejected that condition.

The Supreme Court recognized, but avoided, the problem presented in fee-shifting cases by stating that "the amendment added by the American Jobs Creation Act redresses the concern for many, perhaps most, claims governed by fee-shifting statutes." *C.I.R. v. Banks*, 543 U.S.

426, 430 (2005) (holding "as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee.").

The Court analyzed two cases involving contingency arrangements, but stated that its analysis was not necessarily dispositive of both cases, since one of the plaintiffs "brought his claims under federal statutes that authorize fee awards to prevailing plaintiffs' attorneys." *Id*. at 438. The Court recognized that taxing plaintiffs for the full amount in cases brought under fee-shifting statutes could "lead to the perverse result that the plaintiff loses money by winning the suit" and "undermine the effectiveness of fee-shifting statutes in deputizing plaintiffs and their lawyers to act as private attorneys general." *Id* at 438-439. The Court deferred on these issues since there was no evidence that the settlement was "in lieu of statutory fees Banks might otherwise have been entitled to recover." *Id*. The settlement agreement here was in consideration for all claims, including claims for attorneys' fees and costs.

Respectfully submitted this 20th day of August, 2012.

WEISBERG & MEYERS, LLC

/s/ Ronald S. Weiss
Ronald S. Weiss

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2012, the foregoing document was electronically filed with the clerk of the U.S. District Court for the Eastern District of Michigan, using CM/ECF, which shall send notification of such filing to the following:

Charity A. Olson
Attorney for Defendant
106 East Liberty, Suite 303
Ann Arbor, MI 48104

/s/ Ronald S. Weiss
Ronald S. Weiss